IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RANDY L. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 04-6386-KI |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**Kathryn Tassinari**
Drew L. Johnson, P.C.
1700 Valley River Drive, First Floor
Eugene, Oregon 97401

    Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

**MICHAEL MCGAUPHRAN**
Office of the General Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

**KING, Judge**

Plaintiff Randy L. Anderson seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's final decision is AFFIRMED and the case is dismissed.

## BACKGROUND

Anderson was born on October 4, 1956. He completed the 11th grade and worked as a security aid and rehabilitation technician at Fairview Training Center for over 10 years where he trained clients in living skills such as riding the bus, doing laundry, getting to their jobs, and going camping. He has no other relevant work experience. Anderson last worked in February 1995.

Anderson alleges that he has been disabled since February 28, 1995, due to chronic active hepatitis C, vomiting, and pain that rendered him too sick and weak to work, plus depression, memory loss, and confusion.

Anderson first applied for DIB on May 13, 1996. The Commissioner denied his application in a written decision dated October 29, 1998. The parties stipulated to a remand for further administrative proceedings to reevaluate the severity of Anderson's mental impairments and to

reassess certain medical source opinions. The Appeals Council directed the second ALJ to address the "limitations identified by the State agency psychiatrists" and to elicit testimony from the vocational expert with hypothetical limitations reflecting "the specific capacity/limitations established by the record as a whole, including any mental limitations." Tr. 586.

Anderson filed another Title II application that is not at issue in this litigation. Pursuant to the second application, the Commissioner determined that Anderson became disabled on October 30, 1998. Therefore, the relevant period for this appeal is between the date Anderson alleges he became disabled, February 28, 1995, and the date the Commissioner found him disabled, October 30, 1998.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

3 - OPINION AND ORDER

## DISABILITY ANALYSIS

To establish whether he qualifies for benefits, Anderson has the burden of proving an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which * * * has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR §§ 404.1520. Each step is potentially dispositive.

In step one, the claimant is not disabled if the Commissioner determines that the claimant is engaged in substantial gainful activity. *Yuckert*, 482 US at 140; 20 CFR §§ 404.1520(b). Here, there is no dispute that Anderson has not worked since his alleged onset date.

In step two, the claimant is not disabled if the Commissioner determines that the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 US at 140-41; 20 CFR §§ 404.1520(c). Here, the ALJ found that during the period at issue, Anderson had several physical impairments that are severe within the meaning of the Regulations. However, he found that Anderson did not have an ongoing severe mental impairment before October 30, 1998. That finding is disputed.

In step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 CFR §§ 404.1520(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 CFR Part 404, Subpart P, Appendix 1

(Listing of Impairments). The ALJ found that although Anderson's combined impairments are severe, they are not equivalent in severity to the criteria of any listed impairment. This finding is not disputed.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1545(a), Social Security Ruling (SSR) 96-8p. The ALJ's determination of Anderson's RFC between February 28, 1995 and October 30, 1998 is in dispute.

In step four, the claimant is not disabled if the Commissioner determines that the claimant retains the RFC to perform work he has done in the past. 20 CFR §§ 404.1520(e). Here, the ALJ determined that Anderson was unable to perform any of his past relevant work during the time period at issue. This finding is not in dispute.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR §§ 404.1520(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566. Relying in part on the vocational expert's testimony, the ALJ found that Anderson could perform a significant number of other jobs in the national economy. This finding is in dispute.

5 - OPINION AND ORDER

## SUMMARY OF ALJ'S FINDINGS

The ALJ found that Anderson's ability to work during the relevant period was significantly affected by fibromyalgia, diabetes mellitus, sleep apnea, hepatitis C, gastroesophagel reflux disease/peptic ulcer disease, chronic obstructive pulmonary disease/asthma/reactive airway disease, and Sjogren's syndrome. He has a history of abusing heroin, methamphetamine, alcohol, and cocaine. The ALJ concluded that Anderson's substance abuse was in remission. Anderson also has psychological impairments, including an adjustment disorder with mixed features, which the ALJ found to be "non-severe" before October 30, 1998. Tr. 568.

The ALJ assessed Anderson's RFC during the period of time at issue as follows:

> claimant was limited from lifting and carrying more than 10 pounds frequently with an occasional 20 pound maximum. He was limited from repetitive bending. He had limited tolerance for excessive dust or smoke or for rapid temperature changes. He had limited capacity for extremely rapid activity with the upper extremities. He required some variation in posture or opportunity to change position.

Tr. 568.

The ALJ found that Anderson's limitations impeded his ability to perform all or substantially all of the requirements of light work and left Anderson unable to perform his past relevant work. He determined that other jobs existed in the national economy that Anderson could perform, including storage facility rental clerk, automatic developer of photographs and photo copy operator. The ALJ concluded that Anderson was not disabled before October 30, 1998, and not entitled to disability insurance benefits during the relevant period.

**DISCUSSION**

Anderson alleges that the ALJ erred in finding that his mental impairments were not severe during the relevant period and in rejecting the medical source statements of a number of Anderson's physicians. He contends the Commissioner did not meet her burden of proving that other work exists in the national economy that Anderson retains the ability to perform.

**I.     Step Two:  Severity Determination.**

Anderson argues that the ALJ erred by finding that his psychological impairments were not severe during the relevant period because the ALJ did not accept the earlier ALJ's finding that Anderson has severe mental impairments. This argument misstates the first ALJ's decision because the first ALJ did not conclude that Anderson's mental impairments were severe when considered alone.

The first ALJ found that Anderson had "physical and mental impairments which caused significant vocationally relevant limitations and were therefore severe." Tr. 30. That is, Anderson's *combined* impairments were sufficient to compel the ALJ to proceed beyond step two of the sequential analysis.

At step two of the sequential evaluation, the claimant must make a threshold showing that his combined impairments have more than a minimal impact on his ability to perform basic work-related activities. 20 C.F.R. § 404.1521(a); SSR 85-28. The ALJ must consider the combined effect of all of the claimant's impairments without regard to whether each alone is sufficiently severe. 42 U.S.C. § 404.1523, *Smolen v. Chater,* 80 F.3d 1273, 1289-90 (9th Cir. 1996).

Here, the ALJ found that Anderson's combined impairments satisfied the threshold severity requirement of step two. He properly concluded that the evaluation could not be terminated at step

7 - OPINION AND ORDER

two and continued to the remaining steps of the sequential evaluation. The court finds no error in that conclusion.

Anderson's related arguments that his mental impairments are not accurately reflected in the ALJ's RFC assessment and in the hypothetical limitations used to elicit vocational expert testimony are addressed below.

## II.     RFC Assessment

Anderson contends the ALJ failed to assess his RFC accurately because he rejected the findings and opinions Daniel Ferber, M.D., Lance Loberg, M.D., Britt Simmons, M.D., Elaine Broskie, M.D., and Pritam Kumar Rohila, Ph.D.

### A.     Dr. Ferber's Statement

Dr. Ferber performed a psychiatric evaluation of Anderson in July 1996. His evaluation included a clinical interview with mental status examination, a review of progress notes from Dr. Loberg and a review of a vocational rehabilitation questionnaire completed by Anderson. He did not administer psychometric testing.

Dr. Ferber's clinical findings were generally within normal limits. Anderson was well groomed and dressed, cooperative, made good eye contact and his speech had regular rate and rhythm. He had no psychomotor agitation or retardation. He had sequential thought processes and denied abnormal thought content or psychotic perceptions. Anderson was alert and fully oriented with attention and concentration intact. He demonstrated that his immediate, short term and long term memory were intact. His fund of knowledge was within normal limits and his judgment and insight were good.

Dr. Ferber observed that Anderson appeared sad and his affect was restricted. Anderson reported his mood as "depressed." Tr. 334.

Dr. Ferber diagnosed an adjustment disorder with depressed mood, described as moderate and chronic. He assigned a global assessment of functioning score (GAF) of 40. Dr. Ferber opined as follows:

> The claimant's adjustment disorder with depressed mood effects his ability to function emotionally with regards to social and work relationships, but does not effect his ability to complete his [activities of daily living]. He is able to complete simple one- or two-step tasks

Tr. 334-35.

The ALJ reviewed Dr. Ferber's evaluation and gave his findings and conclusions substantial weight, with the exception that he gave no weight to Dr. Ferber's GAF score of 40 and little weight to his statement that Anderson's mental impairment affected his "ability to function emotionally with regards to social and work relationships." Tr. 558. Anderson challenges this decision not to give full credit to Dr. Ferber's opinion.

An ALJ may reject an examining physician's opinion by making "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002), quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ found that Dr. Ferber's GAF was internally inconsistent with the other findings in his report. A GAF of 40 is used when a clinician judges the patient to have "some impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." AMERICAN PSYCHOLOGICAL ASSOCIATION, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (DSM-IV).

9 - OPINION AND ORDER

As described previously, Dr. Ferber found no indication of impairment in reality testing, communication, judgment or thinking. He found only moderate depressed mood. Although he found that Anderson's ability to "function emotionally" in social and work relationships was affected by his condition, he came far short of finding "major impairment in several areas" as required by the DSM-IV.

The ALJ found the assertion of major impairment in the ability to function in social and work relationships inconsistent with the daily activities Anderson reported to Dr. Ferber. These included daily interactions in family relationships, weekly participation in a drug treatment group and attending church with his family three or four times a week. The record does not reflect any major difficulties in these relationships.

The ALJ also pointed out that Dr. Ferber did not provide any objective support for severe functional impairments. Dr. Ferber examined Anderson only once, did not administer testing and had only minimal medical records available. The ALJ reasonably concluded that Dr. Ferber's opinion was based primarily on Anderson's subjective reporting, which he found not fully credible. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaint of disabling symptoms which the ALJ has properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ also correctly noted that a GAF score does not correlate to the regulatory definition of disability. A claimant's low GAF might reflect difficulties in a wide range of functional areas. In contrast, the regulatory definition of disability focuses on occupational functioning. Significantly, Dr. Ferber did not identify functional limitations in Anderson's ability to perform specific basic work-related functions, such as "understanding, carrying out and remembering simple instructions"

"use of judgment" and "responding appropriately to supervision, coworkers and usual work situations." 20 C.F.R. § 404.1521(b).

Finally, the ALJ chose to give greater weight to the opinion of the impartial medical expert (ME) who testified at the hearing. Susan Dragovich, Ph.D., reviewed all the medical evidence in the record and listened to the testimony at the hearing. She testified that the medical records from the relevant period reflected primarily physical symptoms, with some indications of a fairly benign adjustment disorder with depressed mood. She testified that the medical records supported psychological impairments that were non-severe during the relevant period. Tr. 837.

She referred to a short hospitalization in September 1998, noting that Anderson had been "overdoing it on the narcotics again just prior to that." Tr. 836. The attending physician first thought Anderson "had a major depression, worsened in part by his situation at home." Tr. 480. This first impression quickly changed because Anderson's psychotic symptoms were vague and "somewhat incongruent with his presentation in that he very quickly adjusted to the milieu and within an hour or two was seen laughing, smiling, interacting with other patients and staff in a very appropriate and animated way." *Id.* Anderson was "given a fairly benign adjustment disorder diagnosis upon discharge." Tr. 836. The relevant period ended the next month.

Dr. Dragovich testified that the medical records supported a worsening of Anderson's symptoms after the relevant period. Anderson had a neuropsychological evaluation by Dr. Rohila in March 1999. Tr. Dr. Rohila indicated that "the severity of [Anderson's] neuropsychological impairments is rather mild" but his combined medical and psychological impairments "will impose significant limitations in his ability to work." Tr. 514.

Dr. Rohila's opinion is reasonably consistent with the Commissioner's disability determination in the subsequent application, but does not clearly relate back to the relevant period for the present application.

Dr. Dragovich testified that she could not absolutely rule out that Anderson had undiagnosed mental health problems during the relevant period, but did not see it reflected in the medical records. Tr. 842, 847-48. She opined that it was reasonable to conclude from the record that Anderson did not have functional limitations from his mental impairments before the relevant period expired in October 1998.

The court concludes that the ALJ evaluated Dr. Ferber's opinion based on correct legal standards and properly explained the weight it was given with specific, legitimate reasons. His reasons are supported by a rational interpretation of substantial evidence in the record and will not be disturbed.

### B.   Dr. Loberg's Statement

Dr. Loberg first saw Anderson on April 10, 1996, when Anderson sought medication for diffuse pain. Dr. Loberg started Anderson on an analgesic called Ultram and a tricyclic antidepressant medication called Amitriptyline. Two weeks later, Anderson's symptoms had improved, but Dr. Loberg thought "depression might be part of what is going on." He attempted to increase Anderson's Amitriptyline dosage, but Anderson declined due to drowsiness. Dr. Loberg then started him on Prozac.

Anderson also reported chronic active hepatitis C. He indicated that he hoped to be enrolled in a test protocol at OHSU for hepatitis C treatments with interferon. At this time, his laboratory studies were "only slightly abnormal." Tr. 387.

On May 24, 1996, Anderson said he had improved pain and better sleep on the medications prescribed, but reported being "quite fatigued during the day and having very little energy." Dr. Loberg wrote the following in his progress note:

> I think he is presently disabled from his condition. Unless he gets quite a good response to the interferon or antidepressants, I doubt his ability to be employable.

Tr. 384.

The ALJ gave no weight to Dr. Loberg's statement that Anderson is "presently disabled" or to his expression of doubt regarding Anderson's ability to be employed. Tr. 556. Anderson contends the ALJ improperly rejected this disability statement.

An ALJ may not disregard such statements completely. *Holohan v. Massanari,* 246 F.3d 1195, 1201-1203 (9th Cir. 2001). Here the ALJ did not disregard Dr. Loberg's statements, but explicitly reviewed his progress notes and summarized his opinion.

The ALJ properly found that the rejected portions of Dr. Loberg's notes are not medical opinions about specific functional limitations, but administrative findings reserved to the Commissioner. SSR 96-5p. They cannot be given controlling weight or special significance, even though offered by a treating physician. *Id.*

In addition, the ALJ noted that Dr. Loberg had only a short acquaintance with Anderson from only two or three office visits at the time he made his disability notation. The notes summarizing those office visits did not include medical findings on specific functional capacities or any other medical basis for Dr. Loberg's disability statement. He did not identify specific activities that Anderson's medical condition would prevent him from doing.

13- OPINION AND ORDER

In addition, the record does not show that Dr. Loberg is familiar with the regulatory definition of disability or the basic requirements of work at the light and sedentary levels of exertion. Accordingly, the ALJ was justified in concluding that Dr. Loberg's disability note was beyond the realm of his medical expertise.

In addition, Dr. Loberg's disability comment was inconsistent with the findings of the agency reviewing physicians, the ME that testified during the first hearing and Dr. Dragovich. In August 1996 the agency reviewing physician, Martin Kehrli, M.D., opined that Anderson was physically limited only by hepatitis C and that he was capable of the full range of work at the light level of exertion.

At the first administrative hearing in July 1998, Orin Bruton, M.D., testified that Anderson had a diagnosis of hepatitis C which was described as mild by his physician and by the physician who interpreted the biopsy. Tr. 90-91. The presence of "some inflammatory cells in the biopsy" met the criteria for chronic hepatitis, but there was not "a lot of breakdown of the liver cells, a lot of scar formation [that would suggest] advancing or very active disease." Tr. 95. Instead, Anderson appeared to have a "sort of smoldering, chronic form" that might go on as a low grade problem for a long time. *Id.* Anderson's enzyme elevations were small, showing "that it's really a very mild, chronic form." Tr. 95-96.

Dr. Bruton concluded that Anderson's condition would preclude strenuous activities due to fatigue, but opined that he could perform activities requiring light exertion that did not cause elevated heart rate or perspiration. Tr. 96. The ALJ found Dr. Bruton's testimony consistent with the overall evidence in the record and gave it substantial weight. Tr. 560.

In conclusion, Dr. Loberg's statement that Anderson was "presently disabled" cannot be given controlling weight or special significance because it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is inconsistent with the medical evidence as a whole. SSR 96-5p. The ALJ adequately explained his reasoning with specific, legitimate reasons supported by a rational interpretation of the evidence in the record.

### C.  Dr. Simmons' Statement

Dr. Simmons was one of the physicians at Anderson's primary care clinic. In June 1998, he identified Anderson's diagnoses as chronic active hepatitis secondary to hepatitis B and C; type II diabetes mellitus; fibromyalgia with chronic back pain; bronchial asthma; and chronic anxiety and depression. He noted laboratory tests showing "a moderate elevation in liver enzymes" in January 1998. Tr. 444. He said Anderson's diabetes was under good control with insulin, his fibromyalgia symptoms were reasonably well-controlled using a long-acting narcotic and his asthma was controlled with an albuterol inhaler. Dr. Simmons concluded that Anderson was "significantly disabled due to his medical problems." Tr. 445.

The ALJ gave substantial weight to Dr. Simmons' statement and acknowledged that Anderson's medical conditions affected his ability to work. He declined to accept Dr. Simmon's disability conclusion, as follows:

> If [Dr. Simmons] means by 'significantly disabled' that the claimant's medical impairments create more than mild limitations, this impression is supported by the record. However, if Dr. Simmons' conclusory opinion of disability is meant to indicate that the claimant is totally disabled, it is inconsistent with his other statements that the claimant's impairments are under reasonable to good control with conservative modalities.

Tr. 560.

15 - OPINION AND ORDER

The ALJ's interpretation of the record is reasonable. It is not clear that Dr. Simmons intended to opine that Anderson was disabled in the regulatory sense. Even if he did, his disability opinion is conclusory and fails to identify specific physical or mental limitations or activities that Anderson cannot perform. It is inconsistent with his statement that Anderson's impairments were reasonably controlled and with the medical evidence summarized previously. To the extent the ALJ rejected Dr. Simmons' testimony, he provided an adequate explanation of his reasons based on a reasonable interpretation of the evidence as a whole.

### D.    The Statements of Drs. Broskie and Rohila

In August 1999, Dr. Broskie reported that Anderson had severe or moderately severe limitations in 10 of the 20 categories of mental function on the standard Mental RFC Assessment form. The ALJ gave substantial weight to Dr. Broskie's opinion. The opinion is entirely consistent with the evidence in the record and the testimony of Dr. Dragovich indicating that Anderson became disabled between September 1998 and March 1999. Dr. Broskie's opinion does not speak to Anderson's functional limitations during the period that is relevant to this appeal. It is consistent with the ALJ's decision. Accordingly, the court finds no error in the ALJ's evaluation of Dr. Broskie's opinion.

As described previously, Dr. Rohila conducted a neuropsychological evaluation in March 1999, finding "rather mild" neuropsychological impairments which combined with other impairments to impose significant limitations in Anderson's ability to work. Tr. 514. Again, the ALJ gave these opinions substantial weight. Tr. 562. Dr. Rohila did not relate any functional limitations back to the period that is relevant to this appeal. There is no inconsistency between the ALJ's decision that Anderson became disabled after October 1998 and Dr. Rohila's opinion that he

had significant limitations in March 1999. Accordingly, the court finds no error in the ALJ's evaluation of Dr. Rohila's opinion.

### III.  Vocational Evidence

Anderson contends the ALJ failed to satisfy the Commissioner's burden of proof at step five of the sequential process. At step five, the Commissioner must show that work exists in the national economy that is within the claimant's RFC. *Andrews v. Shalala*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence. *Id.*

Here the ALJ elicited testimony from the vocational expert with a hypothetical question that included all the limitations in his RFC assessment. The VE testified that a person with the limitations in the ALJ's hypothetical question could work as a storage facility rental clerk, automatic developer of photographs, and photocopy machine operator.

Anderson contends the ALJ's hypothetical question did not reflect all of his limitations because it did not include the findings and opinions of Drs. Broskie, Simmons, Loberg, Rohila and Ferber. The ALJ properly considered these medical sources and gave their statements appropriate weight for the reasons described previously.

Anderson also contends the hypothetical question was deficient because it did not include mental functional limitations. He asserts the ALJ failed to comply with the remand instructions of the Appeals Council. The Appeals Council directed the ALJ to elicit vocational testimony with a hypothetical questions reflecting "the specific capacity/limitations established by the record as a whole, including any mental limitations." Tr. 586.

Because the record does not contain sufficient evidence of mental functional limitations during the time period at issue, the ALJ did not err by excluding such hypothetical limitations from the questions posed to the vocational expert.

## CONCLUSION

For these reasons, the court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

Dated this __28th__ day of September, 2006.

        /s/ Garr M. King
        GARR M. KING
        United States District Judge